UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JAMES O. HENSLEY,                       )
                                        )
        Plaintiff,                      )          Civil No. 15-66-GFVT
                                        )
v.                                      )
                                        )        **MEMORANDUM OPINION**
CAROLYN W. COLVIN,                      )               **&**
COMMISSIONER OF SOCIAL SECURITY,        )            **ORDER**
                                        )
        Defendant.                      )

**** **** **** ****

Plaintiff James Hensley seeks judicial review of an administrative decision of the Commissioner of Social Security denying Hensley's claim for supplemental security income benefits as well as disability insurance benefits. Hensley brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Hensley's motion for summary judgment [R. 9] but will GRANT the Commissioner's [R. 10.]

**I**

**A**

Plaintiff James O. Hensley filed an application for Title II disability insurance benefits and Title XVI supplemental social security in December 2011, alleging disability beginning on July 1, 2007. [Transcript (hereinafter, "Tr.") 11, 13.] Hensley's motion for summary judgment explains that Hensley suffers from, among other things: multiple psychological problems related to anxiety and depression; lumbosacral syndrome; lumbar radiculopathy problems; fibromyalgia; heart palpitations; and sleep apnea. [*See* R. 9-1 at 2-3.] Hensley's claims for Title II and Title

XVI benefits were denied both initially and upon reconsideration.  [Tr. 11.]  Subsequently, a hearing was conducted at Hensley's request.  [*See* Tr. 30-75.]  Following the hearing, ALJ Ena Weathers issued a final decision denying both of Hensley's claims.  [Tr. 11-23.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis.  *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claims) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  20 C.F.R. § 404.1520(d).  Before moving to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled."  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired.  20 C.F.R. § 404.131.  Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical.  Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits.  Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Hensley met the insured status requirements of the Social Security Act on his alleged disability onset date of July 1, 2007, and continued to meet them through September 30, 2012. [Tr. 13]; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Hensley had not engaged in substantial gainful activity since the alleged disability onset date. [Tr. 13.] At step two, the ALJ found Hensley to suffer from the severe impairments of degenerative disc disease of the lumbar spine, fibromyalgia, an anxiety disorder, and a mood disorder. [*Id.*] At step three, the ALJ determined Hensley's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. [Tr. 15.] Before moving on to step four, the ALJ considered the entire record and determined Hensley possessed the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain limitations described as follows:

> [H]e is unable to climb ladders, ropes, and scaffolds. He should avoid all
> exposure to hazards, including moving machinery, commercial driving and work
> at unprotected heights. He can perform simple, repetitive, non-tandem tasks
> without strict production demands. He should avoid concentrated exposure to

extreme heat and cold work environments. He can occasionally stoop, crouch, crawl, and climb ramps and stairs. He can frequently perform fine fingering, especially on the right. He can occasionally reach overhead bilaterally. He should avoid concentrated exposure to vibration. He needs occasional verbal instruction reminders with new tasks. He can have occasional interaction with supervisors and superficial to no interaction with coworkers and the general public. He should be allowed to change from standing to seated positions or vice versa for 1 to 2 minutes at the work station every hour or so without interference with his work product.

[Tr. 17.]  After explaining in detail how she determined Hensley's RFC [Tr. 17-21], the ALJ found at step four that, based on this RFC, Hensley is unable to perform any past relevant work but may nonetheless perform various jobs that exist in significant numbers in the national economy.  [Tr. 21-22.]  Accordingly, the ALJ concluded Hensley was not disabled under 20 C.F.R. §§ 404.1520(g) or 416.920(g).  [Tr. 23.]  The Appeals Council declined to review the ALJ's decision [Tr. 1-3], and Hensley now seeks judicial review in this Court.

**B**

The Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

4

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

## A

Mr. Hensley first maintains the ALJ failed to properly consider evidence from his treating physicians. In this case, the ALJ afforded greater weight to non-treating state agency evaluators' opinions than to the opinions of Mr. Hensley's treating physicians. Specifically, the ALJ assigned partial weight to agency evaluators Dr. Dawson, Dr. Swan, Dr. Perritt, and Dr. Ahmad. [Tr. 20-21.] However, little weight was given to the opinions of treating physicians Dr. Koo, Dr. Grefer, and Dr. Noelker. [*Id.*]

As a default rule, more weight should be given to treating sources than to non-treating ones. 20 C.F.R. § 404.1527(c)(2). However, the applicable Social Security regulation provides exceptions to this "treating physician rule" in certain situations. The text of the regulation reads:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other
substantial evidence in your case record, *we will give it controlling weight.* When
we do not give the treating source's opinion controlling weight, we apply the
factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the
factors in paragraphs (d)(3) through (d)(6) of this section in determining the
weight to give the opinion. *We will always give good reasons in our notice of
determination or decision for the weight we give your treating source's opinion*.

*Id.* (emphasis added).

"A finding that a treating source's medical opinion is not entitled to controlling weight
does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by
the adjudicator." Soc. Sec. R. 96-2p, 1996 WL 374188 (July 2, 1996). To determine the weight
to give a treating source opinion when it is not given controlling weight, an ALJ must consider
factors such as the length of the treatment relationship, the frequency of examination, the nature
and extent of the treatment relationship, the opinion's supportability, the opinion's consistency
with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R.
§ 416.927(d)(2)(i)-(ii), d(3)-d(5).

Notably, an ALJ is required to set forth some basis for the decision to reject a treating
source opinion. *See, e.g.*, *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544-45 (6th Cir. 2004);
*Shelman*, 821 F.2d at 321. Where the treating physician rule applies, a reviewing court must
evaluate whether the ALJ gave "good reasons" for his or her decision not to give controlling
weight to a treating source opinion. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R.
§ 404.1527(c)(2).

Mr. Hensley maintains the ALJ failed to use all of the factors outlined in 20 C.F.R.
§ 404.1527 in coming to her decision. Hensley correctly cites the guidance set forth in Social
Security Ruling 96-2p, which states that treating source opinions "are still entitled to deference
and must be weighed using *all* of the factors" provided in the applicable regulations. Soc. Sec.

6

R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996).  However, as the Commissioner correctly

counters, the ALJ was not required to include a *written* discussion of all of the factors in her

opinion.  [*See* R. 10 at 11 (citing 20 C.F.R. § 404.1527(c) and Soc. Sec. R. 06-03p, 2006 WL

2329939, at *2-3 (Aug. 9, 2006).]  The ALJ was simply required to provide some "good reasons"

for the weight she assigned to each of the treating physician's opinions.  [*Id.*]

The ALJ provided good reasons for her decision to afford little weight to Drs. Koo,

Grefer, and Noelker.  Regarding Dr. Koo, the ALJ noted the opinion was given little weight

because of Koo's lack of program knowledge and because the limitations were not supported by

his own treatment records or the medical evidence on the whole.  [Tr. 20.]  The ALJ discounted

the severe restrictions proposed in Dr. Koo's RFC because his personal treatment records and

notes consistently show normal physical exam and mood results.  [*See* Tr. 19 (citing Exhibits 9F,

10F, 15F, 20F, 27F, and 28F).]  These articulated reasons satisfy the ALJ's requirement to

provide "good reasons" for assigning little weight to the opinion.  *See Wilson*, 378 F.3d at 544;

20 C.F.R. § 404.1527(c)(2).

As for Dr. Grefer's opinion, the ALJ determined the proposed RFC was not supported by

Grefer's treatment notes or the notes of "any other treating or examining source of record."  [Tr.

20.]  Mr. Hensley maintains Dr. Grefer did, in fact, see evidence during her office visits to

warrant the severe limitations proposed in her RFC.  [R. 9-1 at 7.]  However, the treatment

records specifically cited by Hensley in support of his position do not convince the Court that the

ALJ's decision lacked a basis in substantial evidence.  To the contrary, the cited treatment

records repeatedly indicate "mild" limitations or impairments and Mr. Hensley's ability to

"ambulate[ ] without difficulty."  [*See, e.g.*, Tr. 699-706, 972, 956.]  The ALJ's reason to give

little weight to Grefer's opinion because of its inconsistency with the record is also a "good reason" under the governing regulations and case law. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2).

Finally, the ALJ gave little weight to Dr. Noelker's opinion because the opinion was "not supported with relevant evidence and is inconsistent with his treatment records and the evidence as a whole, summarized [on previous pages]." [Tr. 21.] The ALJ determined that Dr. Noelker's RFC conflicts with other medical evidence that suggests Mr. Hensley "can perform simple repetitive work with little or no interpersonal interactions or strict production quotas." [*Id.*] The Court does find substantial evidence of Mr. Hensley's normal physical functioning in the record, which would contradict Dr. Noelker's proposed limitations. [*See* Tr. 18 (citing Exhibits 9F, 10F, 15F, 20F, 27F, 28F).] And importantly, the Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.

The substantial evidence standard of review is deferential as it "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen*, 800 F.2d at 545. If the ALJ's decision is supported by substantial evidence, it must be affirmed even if the Court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Her*, 203 F.3d at 389-90. Mr. Hensley's medical history may indeed support a more limited RFC than the one ultimately determined by the ALJ, but the ALJ has provided specific citations to medical records that support her decision and has listed good reasons for affording the treating physicians' opinions little weight. The Court finds the ALJ appropriately handled the treating source opinions and based her decision on substantial evidence.

**B**

Mr. Hensley also attacks the ALJ's RFC on the bases that the ALJ "fail[ed] to adequately explain the source for her residual functional capacity" and that the state consultants did not review the complete case file in violation of Social Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996). The Sixth Circuit's decision in Blakley v. Commissioner of Social Security provides guidance here. *See* 581 F.3d 399 (6th Cir. 2009). In *Blakley*, the ALJ had adopted the findings of the agency non-examiners with only this justification: "[t]he finding that the claimant can perform a range of medium work is consistent with the opinion of the State Agency medical consultants." *Id.* at 409. The Court noted that the agency's non-examining sources had not reviewed over three hundred pages of medical evidence, including ongoing treatment notes from the claimant's treating sources. The Court explained that when agency consultants' opinions are based on incomplete information, there must be "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007); Soc. Sec. R. 96-6p, at *3). Because the ALJ had provided no such indication, the Court remanded.

A similar remand is not warranted here because the ALJ, in addition to considering the state consultants' opinions, considered the subsequent medical evidence unavailable to them. For example, although it appears the state consultants provided their RFC's in early 2012 [*see* Tr. 84, 87, 114, 116], the ALJ references a May 2013 MRI of Mr. Hensley's lumbar spine. [Tr. 19.] Further, to the extent Mr. Hensley is concerned about the additional limitations imposed by the ALJ on Mr. Hensley's RFC [*see id.* (reducing Hensley's RFC beyond what she felt the objective medical evidence required)], the Court does not find this a basis for granting summary judgment in favor of the claimant. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)

9

(finding, where the ALJ afforded weight to a particular opinion and then tempered it in the claimant's favor, "[t]he ALJ could have been more explicit in tying this mitigating gesture to evidence in the record, but we are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way . . . . [I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

## C

The remaining issues raised by Mr. Hensley concern the ALJ's vocational analysis. Hensley maintains the ALJ wrongly relied on the Vocational Expert's testimony first, because the Vocational Expert testified in response to an inadequate hypothetical, and second, because the Vocational Expert's testimony conflicted in various ways with the *Dictionary of Occupational Titles* and other guidance from the United States Department of Labor.  [*See* R. 9-1 at 11.]  With regard to the first point, the Court finds the ALJ's RFC hypothetical was not inadequate.  The Plaintiff's argument here is essentially the same as that addressed above—whether the ALJ adequately considered the medical evidence and thus set forth an RFC which is supported by substantial evidence.  The Court has already determined that the ALJ gave good reasons for weighing the non-treating source opinions more heavily than the treating source opinions.  Further, the record indicates ALJ Weathers' decision was based on substantial evidence.  [*See* discussion at 7-8, *supra*.]

With regard to Hensley's second argument—that the ALJ wrongly accepted the Vocational Expert's testimony about the claimant's employment prospects—the Court again finds in favor of the Commissioner.  Social Security Ruling 00-4p explains that a Vocational Expert's occupational evidence "generally should be consistent" with the occupational

10

information supplied by the *Dictionary of Occupational Titles* ("*DOT*").  Soc. Sec. R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The ruling indicates that where there is an "apparent unresolved conflict" between Vocational Expert evidence and the *DOT,* the ALJ "must elicit a reasonable explanation for the conflict" before relying on the Vocational Expert's testimony.  *Id.*  "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."  *Id.*  However, the ruling does not address what to do when a conflict is not apparent.  *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).

Plaintiff Hensley maintains that every job listed by the Vocational Expert involves requirements contrary to the ALJ's RFC, the *DOT,* and its companion publication *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*.  [*See* R. 9-1 at 11.]  The Commissioner counters by specifically articulating how the Vocational Expert's testimony and the *DOT* do not actually conflict.  [*See* R. 10 at 13-14.]  For example, Hensley criticizes the fact that one of the jobs offered by the Vocational Expert requires a reasoning development level of two.  But the Sixth Circuit has found that an ALJ's RFC limiting a claimant to "simple work" does not mandate jobs with a reasoning level of one, as opposed to reasoning levels of two or three.  *See Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011).

Further, Hensley contends the jobs referenced by the Vocational Expert require "exposure to moving machinery contrary to the limitation of avoiding all exposure to moving machinery" and "interaction with coworkers and/or the general public contrary to the limitation of superficial to no interaction with coworkers in the general public."  [R. 9-1 at 11.]  As the Commissioner correctly points out, the *DOT* lists each of the six jobs identified by the

11

Vocational Expert as requiring no exposure to moving mechanical parts and involving insignificant interaction with coworkers and the public.  *See* DOT Title 323.687-014, 1991 WL 672783 (describing cleaner); DOT Title 222.687-022, 1991 WL 672133 (describing routing clerk); DOT Title 529.685-274, 1991 WL 674713 (describing x-ray inspector); DOT Title 779.687-038, 1991 WL 680755 (describing waxer, or "production worker"); DOT Title 681.685-030, 1991 WL 678151 (describing textile carding-machine operator); DOT Title 559.687-014, 1991 WL 683782 (describing ampoule sealer or "packer").

Sixth Circuit case law suggests that even if some of the six jobs listed by the Vocational Expert irreconcilably conflict with the ALJ's RFC and the *DOT*, that would not warrant reversal or remand in this case.  In *Martin v. Commissioner*, the Sixth Circuit considered a scenario where there were conflicts between the RFC and the *DOT* for two of the three jobs about which the Vocational Expert testified.  170 F. App'x at 374.  Despite this, the court upheld the ALJ's decision, because the ALJ followed the proper procedures and also could have reasonably found that the claimant was able to perform the third job for which there was no conflict.  The Sixth Circuit reasoned:

> Consistent with the SSR 00-4p, the ALJ asked if there was a conflict.  The vocational expert testified that there was not.  Martin did not bring the vocational expert's mistake to the ALJ's attention.  Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.  Furthermore, even if there is a conflict between the expert's testimony and the DOT, neither the DOT or [the expert's testimony] automatically trumps when there is a conflict.  When there is a conflict, the ALJ must resolve the conflict by determining if the explanation given by the expert is reasonable and provides a basis for agreeing with the expert rather than the DOT information.  Because Martin did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved.  Here, the ALJ specifically asked if there was a conflict and the uncontradicted testimony of the vocational expert indicated that no conflict existed.

12

Furthermore, even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have reasonably found that Martin could perform the third position of assembler.

*Id.*

Similarly, ALJ Weathers asked the Vocational Expert repeatedly if his testimony was consistent with Department of Labor guidance, and the expert consistently responded affirmatively. [*See, e.g.*, Tr. 65.] Further, at least some, if not all, of the six possible employment options do not conflict with the ALJ's RFC. The Court does not find this argument reason for overturning or remanding the ALJ's decision with regard to Plaintiff Hensley.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Plaintiff James Hensley's motion for summary judgment is **DENIED** [R. 9], but the Commissioner's motion for summary judgment is **GRANTED** [R. 10.] Judgment in favor of the Defendant shall be entered contemporaneously herewith.

This the 21st day of July, 2016.

Gregory F. Van Tatenhove
United States District Judge